NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | Crim. No. 09-721(DRD) |
| v. | : | **O P I N I O N** |
| CHRISTOPHER J. McATEER | : | |
| Defendant. | : | |

Paul J. Fishman
United States Attorney
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
By:   Zach Intrater
      Assistant United States Attorney

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
By:   Michael S. Weinstein, Esq.
      Attorneys for Defendant.

**Debevoise, Senior District Judge**

Defendant, Christopher J. McAteer, was indicted on one count of possession of child pornography as defined in 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 2252(a)(5)(B). Defendant moved pursuant to Fed. R. Crim. P. 12(b)(3)(c) to suppress evidence recovered from a search of his home computer by agents of the FBI and to exclude from evidence statements he

made during that search.

## I. Defendant's Contentions

In support of his motion Defendant submitted a certification purporting to describe the search. According to the certification, on February 13, 2009, at 7:30 a.m., two agents from the FBI, Special Agent Jamie Banko and Special Agent Jacqueline Cristiano, knocked at the door of the dwelling that he rented, 15 Diamond Drive, Lake Hopatcong, New Jersey. He opened the door; the agents identified themselves; "and proceeded to ask a series of increasingly invasive questions. They did not at that time provide an indication as to the reasons for their visit. Both agents were dressed in black jackets with visible FBI credentials and firearms at their side."

According to Defendant, the agents questioned him about a website called www.youngvideomodels.com and accused him of using the software program Limewire to download pornography. They also advised Defendant that he "needed to cooperate" or they would have "no choice but to question my parents" and tell them that he was a "pedophile." "In addition, the Agents threatened to 'go to every door on this block' and tell my neighbors that I was a 'pedophile'. The Agents further threatened to return with '10 more agents' to carry out a search if I didn't cooperate."

Defendant states in his certification that, feeling rising pressure, when the Special Agents asked if they could insert an ImageScan device in his computer, he signed a consent for such a search. When that failed to produce any data, "and still feeling the overwhelming pressure," Defendant complied with the Special Agents' request that he turn on the computer. This disclosed pictures causing the agents to seize the computer and depart.

The certification concluded: "The FBI's search lasted approximately one hour, and at no

time did the Agents present a search warrant, nor explain to me that the consent I purportedly provided for the ImageScan was also allowing for a more invasive search of the computer by physically turning it on and manually searching through files."

On the basis of these facts Defendant originally contended that (1) the initial ImageScan search of the computer was procured through illegal coercion; (2) even if the ImageScan search were deemed valid, the subsequent full search of the computer exceeded the scope of the consent and was invalid; and (3) the interrogation of Defendant was in a custodial setting, and the failure to provide Miranda warnings required suppression of the incriminating statements he made. Subsequently Defendant withdrew the first and third of these contentions, and an evidential hearing was held to address the question whether the search of the full computer was conducted within the scope of an uncoerced consent. Defendant did not testify at the hearing. Both Special Agent Bank and Special Agent Cristiano testified.

## II. The Special Agents' Testimony

Through the 2006 arrest and interrogation in Italy of a man who operated websites that sold and produced images and videos of child pornography, the FBI obtained thousands of email addresses of individuals who had purchased videos from him. Defendant was one of these individuals. In February, 2009, the FBI considered that the information obtained from Italy was too stale to form the basis of a search warrant of Defendant's home. Consequently, the two special agents who were investigating Defendant decided to employ the commonly used "Knock and Talk" technique.

In essence this technique involves agents, without visible weapons and dressed in casual clothes, knocking on a suspect's door early in the morning, identifying themselves, and stating

that they are investigating computer generated child pornography. They seek to speak with the suspect in his home, and, if he agrees, they carry on as friendly a conversation as possible, assuring the suspect that he is not alone and is one of many people who view child pornography, seeking to elicit as much information about the suspect's child pornography practices as possible. One objective is to have the suspect show to the investigating agents child pornography in his computer.

This technique worked for Special Agents Banko and Cristiano, each a member of the FBI's Cyber Squad. At about 7:30 a.m. on February 13, 2009, they ascertained from Defendant's nearby landlord the building in which Defendant lived. The landlord telephoned Defendant and advised him that the Special Agents of the FBI wished to talk with him. Special Agent Banko was wearing a casual jacket; his weapon, carried on his left ankle, was not visible. Special Agent Cristiano was dressed casually; her firearm was in a holster on her hip and was not visible.

Defendant met the Special Agents at the door. The Special Agents showed him their identifications and told him that they were investigating child pornography and computers. They stated that he was not under arrest and that they had just come to talk. Defendant led them to an upstairs room and the three of them sat at a table.

The Special Agents went through their standard speech designed to put Defendant at ease, assuring him that he was not a bad person, that others were doing it, that they had heard it all before and that they were seeking the producers of child pornography. During the course of the conversation Defendant stated that three years previously, he had commenced viewing child pornography through curiosity and that he had developed an obsession with photographs of 8 to 13 year old girls.

4

At this point the Special Agents asked if they could look into his computer, which was nearby, to see if they could find child pornography. They stated that they had a device, an ImageScan, that they could plug into the computer to conduct the search.

Defendant agreed and signed a consent form that read:

CONSENT TO SEARCH

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of:

with ImageScan

(Describe the person(s), place(s), or thing(s) to be searched)

Compaq Presario 5R1817CL

2. I have been advised of my right to refuse consent.

3. I give this permission voluntarily.

4. I authorize these agents to take any items which they determine may be related to their investigation.

|    2/13/09    |    (signed)    |
|---|---|
| Date | Signature |

Witness    (signed)   
Banko

For an unknown reason the ImageScan did not produce any results. Special Agent Cristiano asked Defendant if he would put in his password so that they could have access to the full computer. Defendant leaned over her and typed in his name and password. Thereupon the Special Agents found child erotica and child pornography. With this they informed Defendant that they would take the computer for further analysis. They prepared a receipt, shook hands

5

with Defendant and departed.

The Special Agents denied having told Defendant that they would interrogate his parents or that they would tell his parents and his neighbors that he was a pedophile. In view of the inaccuracies in Defendant's certification, such as his statement that there was a display of weapons, the Court accepts the Special Agents' testimony to the extent it is inconsistent with the statements in Defendant's certification.

### III. Discussion

Quite appropriately Defendant abandoned his contention that failure to provide him with Miranda warnings required that incriminating statements (of which there were many) be suppressed. Law enforcement personnel must advise a suspect of his Fifth Amendment right to remain silent before initiating a custodial interrogation. Miranda v. Arizona, 384 U.S. 436 (1966). Miranda protections come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

The two Special Agents certainly questioned Defendant, but Defendant was not in custody. He was assured on several occasions that he was not under arrest. He invited the Special Agents into his home and escorted them to his second floor, where they sat at a table talking. Obviously he must have been under considerable pressure, having been informed that the FBI was investigating computer related child pornography and knowing both that he was guilty of the offense and that proof of its occurrence resided in his computer. But being under pressure is not equivalent to being under arrest. There was no occasion for the Special Agents to provide Defendant with a Miranda warning.

Quite appropriately Defendant also abandoned his contention that his consent to the original search of his computer was procured through illegal coercion, and any evidence resulting from that search must be suppressed. Searches and seizures inside a home without a warrant are presumptively unreasonable and a violation of the Fourth Amendment. Payton v. New York, 445 U.S. 573, 586 (1979). A consent freely and voluntarily given is an exception to this prohibition. U.S. v. Price, 558 F. 3d 270, 277-78. Certainly Defendant's written consent was freely and voluntarily given. He had permitted the Special Agents to enter his home; he had escorted them to his second floor where he kept his computer, and he had conversed at length with them. Upon their request he signed the consent form, clearly a voluntary act.

As a last line of defense, Defendant contends that he only gave a tightly limited consent to search his computer, that is to say, a search conducted with ImageScan and nothing more. Looking at the language of the written consent alone, there might be found an ambiguity: "to permit a complete search of: with ImageScan Compaq Presario 5R1817CL." Taken in the context of the entire conversation between Defendant and the Special Agents, the consent cannot be interpreted as being so limited. At the outset the Special Agents stated that they were investigating child pornography and computers. Their discussion at the table on the second floor was about Defendant's use of his computer to obtain child pornography. The Special Agents asked Defendant if he would consent to their examining his computer in order to find child pornography. Defendant did not insert the words "with ImageScan." The Special Agents inserted those words, not as a limitation on their search, but in expectation that they could accomplish their purposes with ImageScan. Defendant granted the Special Agents consent to search his computer for evidence of child pornography, not limiting in any way the method of

7

search.

In United States v. Kim, 27 F 3d 947 (3d Cir. 1994), defendant, occupying a sleeper roomette on an Amtrak train, voluntarily consented to DEA agents looking for drug smugglers, to search his luggage. The DEA agents opened six factory sealed cans of vegetable protein contained within the luggage and found drugs within the cans. The defendant contended that the search was illegal, as his voluntary consent was exceeded. Pertinent to the instant case, the Court of Appeals held that a reasonable person would have understood the exchange between the DEA agents and the defendant as having indicated the defendant's authorization to search the luggage to have included permission to search the sealed cans within the luggage. So here, a reasonable person would have understood the exchange between the Special Agents and Defendant as indicating that Defendant's authorization to search his computer for child pornography included a manual search, as well as a search by ImageScan.

Defendant's actions after the failure of ImageScan confirm this finding. The Special Agents asked to proceed manually. Upon that request Defendant immediately leaned across Special Agent Cristiano and typed in his name and his password. This was done pursuant to the original consent. Were the original consent construed as narrowly as Defendant construes it, it was a voluntary new consent to search.

### IV. Conclusion

Defendant's motion to suppress evidence and to bar the admission of incriminating statements will be denied in its entirety. The Court will enter an order implementing this opinion.

Dated: February 16, 2010

*s/ Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
U.S.S.D.J.